Please proceed. Good morning everyone and welcome to the Ninth Circuit. Judge Miller and I want to welcome and thank Judge Ezra who I think has been in trial recently if I remember correctly so we appreciate you taking time out to to take this argument and I hope I know we had some severe weather issues let's just say well we were going to do this argument previously and so I hope everyone's a little wet we're getting hammered here in California right now with rain oh yeah um so you know it's uh it's just it's pretty bad uh but I see both counsel here uh Ms. Baird I believe uh you're up first is that correct? Yes Judge Owens thank you very much and thank you the court for its um consideration with the hurricane last time I appreciate it. Yeah well we have earthquakes out here and fires you have hurricanes I'm not sure which is worse. I hope the rain will be okay. Ms. Baird you may you may proceed when you are ready. Thank you. May it please the court Lisa Baird pro bono counselor counsel for petitioner Akram Azizov. I'd like to reserve two minutes for rebuttal. Sure. The two key issues in this case are a nexus issue for asylum and withholding of removal and for Mr. Azizov convention against torture or tax claim whether there was a particularized risk of harm and involvement or acquiescence of a government official. For both of these issues the foundational problem is the IJ misstated and ignored crucial pieces of evidence and those errors were adopted and affirmed by the BIA taking the record as a whole. The evidence compels the conclusion that Mr. Azizov was targeted because he was a Uyghur and because he expressed political opposition to the Salem-Beckoff plan and the MBEC political party. Turning to the nexus issue as this court well knows for asylum the applicant must establish that a protected ground of race or political opinion was or will be at least one central reason for persecution of the applicant and for withholding there must be a clear probability that a protected ground is at least a reason for the persecution and Mr. Azizov did that. Notably an applicant may be persecuted for mixed reasons for both protected and non-protected grounds and still qualifying for relief. Authorities like Barajas Romero and Parasumova if I said that correctly tell us that even for asylum which has a somewhat stricter nexus test the protected ground doesn't need to be the only central reason or even the most important reason and in this case the whole reason Mr. Azizov was targeted for having his business stolen was because he was a Uyghur with less rights than ethnic Kyrgyz citizens and the precipitating incident was his opposition to the Salem-Beckoff plans demand for political support. So Ms. Baird let me jump in here because there's a sentence in the BIA's decision it's on page two of the BIA's decision I think it's on page four of the of the record it's in the middle it's in the second full paragraph and the sentence reads as follows when you're ready. Yes. Says the respondent did not demonstrate any motive or underlying cause for any of the alleged harm or threats that did not arise from the legal matters i.e. a personal dispute related to his marketplace rental. Now I guarantee you when opposing counsel stands up they're going to point to this sentence. Right. Tell me first what is the standard of review for us on this and second why is the United States wrong about why this sentence doesn't end the case? Well I think for this sentence the standard is substantial evidence because it's a finding of fact but the problem is that you know the IJ and then the BIA ignored and misstated evidence and what they did was they said he was speculating as to the motives but in fact the evidence showed his testimony his three declarations and there are exhibits in the record including statements from other people in the market saying while they were taking his stuff it was because he was a Uyghur who stood up politically. So it's direct testimony or you know direct evidence as to the motive of the persecutors and those persecutors included a lieutenant colonel of the police who was acting as sort of an enforcer for Erbten Salambekov and later on police officials were directly involved in the beating that occurred in 2017 near the border with Kazakhstan and again while the beatings are occurring Mr. Azizov's testimony corroborated by his colleague who was with him at the time and his statement in the record was that they were telling him he was being beaten because he was a Uyghur and because he stood up he was a Uyghur who dared stand up politically to the Salambekovs. So I don't get how the immigration judge and the BIA concluded it was just speculation that is direct evidence of their motive. I hope that answers your question Judge Owens. It does and I had a follow-up question is that in this case we have the BIA's decision which to me seems like it relies in part on the IJ's decision. Would you agree with that? I would agree that it was hard to tell what was going on and they said that they adopted and this and then they cited Bourbon. So I think it is appropriate to look to both you know and I would say that the BIA you know made the same errors again that the IJ did. Ms. Baird if I may quickly what I found a little bit puzzling is that the IJ seemed to indicate that your client was credible, didn't have any issues with his credibility and yet also seemed to either ignore or discount in a way that didn't find its presence in her decision all of his various statements about how he was beaten and threatened because of his Uyghur ethnicity. Right and that is a point that I wanted to get to so I'm glad you asked the question. What the judge said was that his testimony was consistent internally with the documentary evidence and where the judge said it was a not it was kind of incredible. It was based on her fundamental misunderstanding or misstatement of the record evidence. Starting with the fact that she presumed that Mr. Azizov had been repaid in full but if you look at the testimony what he testified to was that he had leased various parts of the market, a stall, a hangar, put in refrigerator equipment. His testimony establishes he had spent over $70,000, $46,000 in refrigerator equipment, $24,000 for the lease and she looks at testimony where Erlan which was his supplier of meat was able to at some point go back and get some of the money and of course Mr. Azizov got that weird promissory note that was never paid and the judge misunderstood that testimony to think to state that he had been paid in full thus there was no persecution let alone persecution on a protective reason. If you correct that fundamental misperception by the immigration judge that the BIA then adopted all that confusion that the immigration judge had falls away. So I would say that that is the fundamental kind of mistake of fact there. My review of the record Ms. Baird seems to indicate that there was $5,000 that may have been paid to somebody but he said he didn't get any of it and this promissory note which appears to be somewhat illusory promissory note for some amount of supplier who was able to go back in December of 2015 to get and got $5,000 to him and not to Mr. Azizov and I think the other confusion may have been that the the cure currency is some SOM and I think the immigration judge may have heard that as some and so she was looking at the totals and thinking that he was talking about you know thousands of dollars that are longer covered when in fact 75,000 here SOM is about 875 U.S. dollars. So there's you know you know I admit that the the history is long but it was incumbent on the immigration judge and the BIA to look at the evidence fairly and appreciate it and not misstate it and not ignore any material parts of it. I see my time is almost up so if I will jump just to a concluding statement we would ask the court to hold that there were legal there was legal error in the standards applied that the record compelled the conclusion that he established a nexus and entitlements had and either grant the petition and remand with instructions to grant relief or at a minimum remand for further proceedings consistent with the court's disposition. All right thank you counsel. Madam Deputy if you could give Ms. Baird two minutes for rebuttal when she comes back. So you got you got two minutes on the on the comeback Ms. Baird. Thank you Judge Edwards. All right counsel for the Attorney General. Good morning your honors or good afternoon in my case and may it please the court. My name is Jessica Strokos and I represent the United States Attorney General. This court should deny the petition for review because substantial evidence supports the agency's nexus determination and denial of cap protection. Just to get right into nexus the question here is really is there evidence compelling the conclusion an alternative conclusion to what the agency found and there's already been discussion this morning about confusion in the record in the timeline and the timeline here is actually very important because it shows that the petitioner in this case did not suffer harms that were in any other way other than speculation or his personal belief connected to his ethnicity or to his political opinion. In the timeline the petitioner rents a stall in a marketplace from for the landlord in September of 2015 he's summoned to the landlord's office and told to pass out ballots to support the landlord's brother in a local election. He says he's not going to do that the landlord is mad he continues but petitioner continues to operate his stall. In October of 2015 so one month later the landlord's brother loses the election with zero percent of the vote and then in late December 2015 so December 21st 2015 the petitioner is called to the landlord's office and told that he is essentially being evicted from the stall because they had received a report that he had sold spoiled or poisoned meat and that someone had gotten sick. Can we step back a little bit in time my recollection of the record of the testimony of the petitioner was that at the time at the very time that he told the landlord that he wasn't going to support his I guess it was his brother that the landlord went after him in a big way threatening him accusing him of being you know essentially an ungrateful Uyghur who was living in the Kyrgyzstan and you know basically will show you or I'll get you Uyghur and went after him for his Uyghur ethnicity this was like immediately um when he told him that he was not supporting his brother wasn't uh you know just based upon the political party it was based on his ethnicity. Sure your honor and the quote that I have from the record written down is that the landlord said you forgot about the few how dare you talk about the inclusion of his ethnicity um may have been you know a way to insult the petitioner in that moment but no direct harm is linked to um his his ethnicity or his refusal to pass out these ballots multiple months go by and the landlord's brother loses the election with zero percent of the vote to an individual that it that has the same ethnicity as the petitioner and three months go by before anything um happens and the one thing that happens is he loses his stall he's essentially evicted and there's no um connection in that moment to you didn't pass out the ballots for my brother or you know because you're you're this ethnic minority you know why would he rent to an ethnic minority for for multiple for multiple years in the first place if there was an issue there um the the connection is to he you there was a report that you sold spoiled meat that's what um the petitioner says um the ij seems to have viewed it as very important that um when when petitioner was evicted he was paid he was bought out and paid fair value for the lease the ij mentions that several times um and what what is the evidence of that because it he got this promissory note from this third party he had no relationship to he doesn't seem to have been able to clocked on it so um it seems from the record like he did not receive anything close to fair value so what's the basis for the ij's statement so your honor um he received a promissory note from a third party i believe the name is mandikov um that the landlord had given him um and to to essentially go collect from mandikov i believe it was for twenty four thousand dollars um at least according to the record and um and the petitioner uh eventually confronts or has a meeting with mandikov mandikov doesn't want to pay the promissory note so the petitioner takes mandikov to court files a lawsuit against him and on august 12 2016 um and eventually two different courts in um two different courts say yes you are owed this money from mandikov um that and that is about the amount of money that was for the remainder of his lease of the stall now the petitioners brought up that he had equipment and whatnot in um in his stall that he wasn't able to access but the record shows that he went on one occasion to try to get it back but he had not received permission to go into the marketplace from the landlord um and so he was for that reason but does the record show that he was actually able to collect the money from mandikov the record shows that um i believe it was at a court hearing on let me see if i can find it in my notes at one court hearing um his attorney admitted that he had been given five thousand dollars um and that the balance that was owed to him was nineteen thousand dollars now the petitioner that he he didn't actually personally receive that money that it was one of his agents that received that money um but the his attorney did admit in court um that not not in immigration proceedings but in court um in uh abroad that uh he had received five thousand dollars so there's some contradictory evidence there but but still i think the point remains that if you're if you're some money and instead of getting the money you get a promissory note from some other person for that money and of which you're able to eventually collect you know about 20 percent that just seems like it seems very hard to me to understand how you can describe that as being given fair value for what you were owed and that seems to have been a key premise of the ijs decision so i think an important an important part is that the courts did say that he was owed that money from mandikov the issue here really seems to be that the petitioner is upset with the landlord who's not mandikov it was solemnikov um and even though he was he was able to collect and the courts are saying to mandikov you have to pay him this money that he's just not satisfied with that and he believes he genuinely believes that solemnikov kane mandikov all the potentially border patrol but also potentially unknown asian people depending on what account of his you want to take uh as true um and that these two random detainees in in when he was detained by the police after making many false reports um that he genuinely believes that they they are harming him and that he was targeted because they had a basic motive that he was that they didn't like his solemnikov's brother lost but with zero percent of the vote but his genuine belief about the basic motivuses of his persecutors of his people that harmed him isn't the question the question is what what were what did those people believe and the evidence in this case there's just a lack of evidence showing that it was his ethnicity or that it was because of this political issue it really every single time you know when he walked into detention the two people didn't say oh here's a weaver i'm gonna beat him up they said he they said what happened to you why are you here and when he explains that he wants to sue or get solemnikov in some kind of criminal trouble that's when they go after him um and every time that he's harmed after he he keeps bringing up this business dispute essentially and he's being harmed only after he brings it up um and that's what the timeline shows here and and while his genuine belief may be that he's being targeted because of his ethnicity while there may be um insults ethnic insults being used the the record evidence here simply is is not compelling to show that that a basic motive of his persecutors was his ethnicity or was his political opinion and that's dispositive of nexus maybe i'm maybe it's because i'm a principally a district judge but what what i what i what i look at when somebody comes before me is what is the actual evidence because i know that's what the court of appeals is going to look at what is the actual evidence and the evidence the only evidence that that we have essentially is his repeatedly saying that he was threatened again and again and again because of his Uyghur ethnicity and the evidence on the other side is um try to extrapolate into the mind of those who were threatening him that that wasn't really what they were threatening him about they were really threatening him because of his dispute i mean i we just can't extrapolate into somebody's mind and the problem here is that the ij says well you know this guy's credible you know that's that's why i said it just kind of normally in a situation like this where the ij finds so much evidence on the other side which i think might have been the stated evidence the ij will say well this person is you know not credible you know we see that all the time but no in this case he says oh no he's credible but then yes i i i understand what you're saying and i see them over my time but i'd like to answer um your question if the court would allow me to it's not for me go ahead sure uh first i would mention ming dai ming dai the supreme court says credibility is not dispositive is not dispositive of establishing persuasiveness and legal sufficiency that's really important in this case so while he may be credible why he may have these genuine beliefs that's not enough to satisfy the standards um for for in this case nexus um and the nexus inquiry is is again the supreme court says in elias zacharias um that nexus is talking about the basic motive of the persecutor um so we do have to look at what reason did that individual have for harming someone and it's not enough that the petitioner himself may believe that he was harmed because of his ethnicity or because of his political opinion or for whatever reason other reason we need to look at the evidence to say okay what what does the evidence show the basic motive of the persecutor was and in this case while the petitioner tries to link his ethnicity somehow or link this political incident somehow the things that happen immediately before he suffers any kind of physical harm um are he says i want to get my landlord in trouble i want to sue him i'm not satisfied with the court saying that i'm owed money from this other person um and and at that moment um he's harmed um so i i think ming dai and elias zacharias really are the two governing cases here um for the nexus the agency's nexus determination um and that substantial evidence does does support that decision all right thank you very much counsel we'll hear now from uh miss baird thank you i would agree with my opponent that the timeline is very important and it shows that every time that mr azizah stood up to sell him back off either politically or as a leader who did not know his place um he was retaliated against and the testimony from him about what was said to him as that retaliation was taking place is direct evidence of that motive including things like the lieutenant colonel who talked about the tainted meat um which was a fiction um an excuse said what will happen to to you and all the weakers if we tell them that um a weir has poisoned the kirk so you know it's it's i concur with uh judge ezra that all that is in the in the in the evidence and in the record and um with regard to the whether he was paid or not um the council pointed to the the court records in kyrgyzstan and i would point the court to a or five five eight which was the notice from the police captain refusing to exit execute on the judgment um against that promissory note so there was no payment um in full certainly um i would also say that the the fact that um oscar selling back off got zero percent of the vote actually increases the chances of the interest in retaliating against mr azizah for not supporting him um and then just for a moment i'd like to talk about the uh political errors um the judge said that mr azizah testified he wasn't part of a member of a political party that is not the standard the the statute says political opinion the nexus for withholding the standard applied there was wrong and then on cat uh the courts the bia's decision says um he will be my time is up no finish your finish your point um the the the bia's standard for pat was that he will be harmed um instead of more likely than not and by the kyrgyz government writ large instead of a government official so there are um as well uh legal errors that infect the bia's decision and the ij's decision that it adopted all right thank you very much counsel thank you both for your briefing and your argument uh back when uh judge miller and i were law clerks in the supreme court a chief justice rehnquist would actually cut off people mid-sentence uh we're a little kinder and gentler when it comes we do let you finish with that this matter is submitted and this kind of mini panel for the day is adjourned thank you everybody the court for this session stands adjourned thank you
judges: OWENS, MILLER, Ezra